Affirmed and Memorandum Opinion filed February 20, 2003















Affirmed and
Memorandum Opinion filed February 20, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00443-CR

____________

 

JOHN DWAYNE JAMISON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

______________________________________________

 

On Appeal from the 176th District Court

Harris County, Texas

Trial Court Cause No. 871,835

 

______________________________________________

 

M E M O R A
N D U M   O P I N I O N

            John
Dwayne Jamison appeals from his conviction for murder.  After appellant pled true to two enhancement
paragraphs, a jury found him guilty and assessed punishment at 50 years
imprisonment.  Appellant contends the
evidence is legally and factually insufficient to sustain his conviction.  We affirm.

The
Evidence

            On
the morning of March 9,
 2001, Keith Davis was fatally shot outside a Texaco service
station.  In its case-in-chief, the State
presented testimony from an eyewitness to the shooting as well as several
witnesses who provided circumstantial evidence against appellant.

            George
Cunningham testified that, on March 9, he stopped at the service station.  While inside, he saw appellant and someone he
knew as “Goldie,” who he believed to be related to appellant.  Cunningham stated that Goldie was having an
argument with the cashier and appellant was standing by the door holding a gun
in his hand.  Cunningham left the store
after making a purchase and, while using the payphone outside, he overheard
Goldie, appellant, and the decedent, Davis, arguing
about a drug sale.  He then heard
gunshots.  Although he heard the shots
come from the area of the Texaco station, he did not see who fired the
shots.  When he did look in the direction
of the gunfire, he saw appellant and Goldie get into a car and speed away, and
he saw Davis lying on
the ground, bleeding from his head.

            Juan
Granados testified that he was working at the Texaco station that day.  He said he knew Goldie to be a drug dealer
who frequented the station, and he knew appellant as Goldie’s cousin.  He further stated that he had previously lent
Goldie $50 and, when Goldie and appellant came into the store that morning,
Granados and Goldie argued about the debt. 
Goldie challenged Granados to go outside and fight, but Granados noticed
appellant had a gun in his waistband and decided not to go outside, fearing he
would be shot by appellant.  As Goldie
and appellant walked out of the store, Granados heard Goldie say, “It’s a
lick,” which he took to mean someone was coming to purchase drugs.  After they walked out, Davis came into
the store to use the restroom.  As he was
leaving, Davis said to Granados
that “they” were going to “mess” or “play” with him when he left the
store.  Granados then observed Goldie
follow Davis through
the parking lot as the two argued, and he saw appellant pull out his gun and
point it at Davis.  Moments later, Granados heard three gunshots,
but he did not see who fired.

            Melvin
Barnes testified that on the morning of March 9, he drove a friend and another
man, who was looking to purchase drugs, to the Texaco service station.  Before they left, Davis drove up
and a woman in Davis’s vehicle
asked Barnes to give her something of hers that he had in his possession.  Barnes told her that he would give it to her
if she and Davis followed him.  At the
station, Barnes told Goldie that the man wanted to buy drugs.  Goldie referred Barnes to another man, known
as “Rock,” who said he would have to go to his house to retrieve the
drugs.  At some point, Barnes began to
leave with his two passengers, but Goldie and Rock opened the doors to Barnes’s
vehicle.  An argument ensued, during which
Barnes observed Davis step out
of the store and walk toward his vehicle, which was parked next to Barnes’s
vehicle.  As he passed the group, Davis said, with
a smile, “Don’t shoot him with the shotgun.” 
Appellant then discharged his handgun twice into the air and said to Davis, “Do you
think this a game? [sic].”  According to
Barnes, appellant pointed the gun at Davis and shot
him.  Barnes fled the scene, but when he
later heard on the local news that Davis had been
killed, he went to the police.

            The
State also introduced evidence from several law enforcement personnel.  Sergeant E.T. Yancheck
stated, among other things, that he compiled photospreads
out of which Granados and Cunningham positively identified appellant as the man
they saw with a firearm at the station that morning.  Yancheck further
testified that he retrieved a spent shell casing from the bed of Barnes’s
pickup truck.  Dr. M. Gonsoulin,
an assistant Harris County medical
examiner, testified that he performed an autopsy on Davis and determined
that he died of a single gunshot wound to the head.  Robert Baldwin, a criminalist
with the Houston Police  Department’s
crime lab, testified that a bullet found lodged in the back of Davis’s neck and
the casing retrieved from the bed of Barnes’s truck likely were fired from the
same type of handgun.

            The
appellant testified on his own behalf. 
He admitted being present at the station on the morning in question, but
he claimed he did not have a gun at the time and that he did not shoot Davis.  He stated instead that he heard Goldie
arguing with Davis then he
heard gunshots.  He said he followed
Goldie because he was frightened and that he later fled to Louisiana because he
was afraid of Goldie.  In addition to the
conflicting testimony of other witnesses, appellant was impeached with proof of
his prior convictions for aggravated assault with a deadly weapon, felony
theft, and misdemeanor theft.  Appellant
also called his girlfriend, Catina Scott, as a
witness.  She stated that appellant
called her from Florida and told
her that he had been present at the station when another person shot Davis.

Standard of
Review

            In
reviewing legal sufficiency, we examine the evidence in the light most
favorable to the verdict and ask whether any rational trier
of fact could have found all of the elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979);  Santellan v. State, 939 S.W.2d 155, 160 (Tex. Crim.
App. 1997).  We accord great deference to
the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences therefrom. 
See Clewis
v. State, 922 S.W.2d 126, 133 (Tex. Crim. App.
1996).  We further presume that any
conflicting inferences from the evidence were resolved by the jury in favor of
the prosecution, and we must defer to that resolution.  See id.
at 133 n.13.  In conducting this review,
the appellate court is not to re-evaluate the weight and credibility of the
evidence, but must act only to ensure the jury reached a rational
decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim.
App. 1993); Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

            In
reviewing factual sufficiency of the evidence, we examine all of the evidence
without the prism of “in the light most favorable to the prosecution” and set
aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Johnson v. State, 23 S.W.3d 1,
7 (Tex. Crim. App. 2000).  We
consider all of the evidence in the record and not just the evidence which
supports the verdict.  Santellan, 939
S.W.2d at 164.  The court is authorized
to disagree with the jury’s determination, even if probative evidence exists
which supports the verdict.  Clewis, 922
S.W.2d at 133.  However, a factual
sufficiency review must be appropriately deferential to avoid substituting the
appellate court’s judgment for that of the fact finder or substantially
intruding upon the jury’s role as the sole judge of the weight and credibility
of testimony.  Johnson, 23 S.W.3d at 7. 
Unless the record clearly reveals that a different result is
appropriate, we must defer to the jury’s determination concerning the weight
given to contradictory testimony.  Id. at 8.

            Under
his factual sufficiency arguments, appellant contends that the Texas
Constitution’s grant of authority to review factual sufficiency to the
intermediate courts of appeal includes the authority to review the credibility
of witnesses.  Although intermediate
appellate courts are not precluded from reviewing the credibility of witnesses,
the scope of that review is exceedingly narrow. 
See id. at 8–9.[1]  The reasons for this stem from the very
nature of live testimony.  The fact
finder, in this case the jury, was present to observe the witnesses body
language, mannerisms, voice inflection, cadence, and other keys to weighing
credibility that we generally cannot discern from the cold record.  See id.
at 8 n.9.  Accordingly, we must afford
great deference to the jury’s credibility determinations.

Analysis

            Appellant
contends that the evidence is legally and factually insufficient to sustain his
conviction because the State failed to present a credible case against
him.  However, an eyewitness testified
that appellant shot Davis.  Appellant was identified by other witnesses
as possessing a firearm at the Texaco service station the morning of the
shooting.  Although there may be minor
discrepancies in the testimony of various witnesses, the most critical pieces
of evidence went uncontradicted except by appellant’s
own self-interested testimony, which was impeached by both the testimony of
other witnesses and by his own prior felony and theft convictions.  See
generally Tex. R. Evid. 609 (permitting use of certain prior
convictions for impeachment purposes). 
Although the physical evidence collected at the scene does not directly
implicate appellant, it does generally comport with witness testimony.

            Appellant
makes four specific points in arguing insufficiency of the evidence: (1) Barnes
testimony regarding the shooting was uncorroborated; (2) Granados, the Texaco
cashier, testified that he saw appellant’s companion, and not appellant, point
a firearm at Davis; (3) appellant himself testified that Davis was shot while
with appellant’s companion and appellant did not shoot Davis; and (4) Scott,
appellant’s girlfriend, testified that appellant told her that another person
shot Davis.  We find that each of these
points either lacks merit or lacks sufficient weight to require reversal.

            First,
although no other eyewitnesses to the shooting testified, Barnes testimony was corroborated by Cunningham and
Granados to the extent that they, too, observed appellant with a weapon on the
morning in question.  Indeed, Granados
testified that he saw appellant point a weapon at Davis and,
shortly thereafter, heard shots. 
Furthermore, Barnes’s testimony regarding the shooting was otherwise
clear, direct, and without internal contradiction.  The jury was free to believe Barnes’s
testimony as they saw fit.  See Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000) (“The jury may choose to
believe some testimony and disbelieve other testimony.”).  Second, appellant’s contention that Granados
testified it was appellant’s companion who possessed a firearm that morning
appears to stem from a misreading of the record.  Granados’s
testimony clearly reflects that he saw appellant, and not his companion, with a
firearm.[2]  Third, appellant’s own testimony may well
have been discounted by the jury due to its self-interested nature and the fact
that it was contradicted by the testimony of other witnesses and was otherwise
impeached by appellant’s past convictions. 
Lastly, Scott’s testimony may have been discounted by the jury because
it was arguably in her self-interest and because it was essentially just a
recitation of statements allegedly made to her by appellant.

            In
sum, we find that a rational trier of fact could have
found all of the elements of the offense beyond a reasonable doubt.  See Santellan, 939 S.W.2d at 160.  We further find that the verdict was not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  See Johnson, 23 S.W.3d at 7. 
The evidence is legally and factually sufficient to support the
verdict.  Accordingly, appellant’s issues
are overruled.

            The
judgment of the trial court is affirmed.

 

                                                                                    

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed February 20, 2003.

Panel
consists of Justices Edelman, Seymore, and Guzman.

Do
Not Publish — Tex. R. App. P.
47.2(b). 

 

 











            [1]  In Johnson,
the Court of Criminal Appeals stated:

 

The degree of deference a reviewing court provides must be
proportionate with the facts it can accurately glean from the trial
record.  A factual sufficiency analysis
can consider only those few matters bearing on credibility that can be fully
determined from a cold appellate record. 
Such an approach occasionally permits some credibility assessment but
usually requires deference to the jury’s conclusion based on matters beyond the
scope of the appellate court's legitimate concern.  Unless the available record clearly reveals a
different result is appropriate, an appellate court must defer to the jury's
determination concerning what weight to give contradictory testimonial evidence
because resolution often turns on an evaluation of credibility and demeanor,
and those jurors were in attendance when the testimony was delivered.

 

23
S.W.3d at 8.





            [2]  As the States points out, appellant’s brief
makes several references to appellant by the nickname “Goldie.”  However, the record is clear that in using
this nickname the witnesses intended to refer to appellant’s companion and not
appellant.  This confusion likely
explains the appellant’s erroneous assertion that Granados testified it was the
companion who possessed a weapon. 
Appellant testified that although he and the other man share the same
last name, they are not related.